UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL McCALLION,

                                   Plaintiff,

v.                                                                     9:22-CV-0253
                                                                       (GTS/CFH)
C.O. MATTHEW MARRA, SGT. JOSEPH COFFEY
C.O. MARCUS HART, C.O. SHAWN BARBARITO,
C.O. GORDON GRIFFITH, C.O. WEIDNER, and
C.O. KREG JACKSON;

                                   Defendants.

_____

APPEARANCES:                                        OF COUNSEL:

SIVIN, MILLER & ROCHE LLP                            EDWARD SIVIN, ESQ.
   Counsel for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10019

HON. LETITIA A. JAMES                                NICHOLAS W. DORANDO, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this prisoner civil rights action filed by Michael McCallion

("Plaintiff") against C.O. Matthew Marra ("Marra"), Sgt. Joseph Coffey ("Coffey"), C.O. Marcus

Hart ("Hart"), C.O. Shawn Barbarito ("Barbarito"), C.O. Gordon Griffith ("Griffith"), C.O. Craig

Weidner ("Weidner"), and C.O. Kreg Jackson ("Jackson"), is Defendants' motion for partial

summary judgment.   (Dkt. No. 51.)   For the reasons set forth below, Defendants' motion is

granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

The claims in this action are: (1) Eighth Amendment excessive force claims against all Defendants; and (2) First Amendment retaliation claims against Defendants Weidner and Jackson.   (Dkt. No. 20.)

### B.      Statement of Undisputed Material Facts on Defendants' Motion for Summary Judgment

Under N.D.N.Y. Local Rule 56.1, a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises."   N.D.N.Y. L.R. 56.1(b).   This requirement is not a mere formality; rather "this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties."   *LaFever v. Clarke*, 17-CV-1206 (DNH), 2021 WL 921688, at *6 (N.D.N.Y. Mar. 11, 2021) (quoting *Frantti v. New York*, 414 F.Supp.3d 257, 284 (N.D.N.Y. 2019)).   Indeed, "[a] proper response to a movant's statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.' "   *LaFever*, 2021 WL 921688, at *7 (quoting *Alke v. Adams*, 16-CV-0845 (DNH), 2018 WL 5297809, at *2 (N.D.N.Y. Oct. 25, 2018)).   "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does

not specifically controvert."   N.D.N.Y. L.R. 56.1(b).

Applying this legal standard here, the following facts have been asserted and supported by record citations by Defendants, and either expressly admitted or denied without a supporting record citation by Plaintiff.   (*Compare* Dkt. No. 51-1 *with* Dkt. No. 57-7.)[1]

1. Between October 28, 2020 and November 5, 2020, Plaintiff was housed at Gouverneur Correctional Facility ("Gouverneur C.F.").   (Dkt. No. 51-1 at ¶ 1.)

2. On October 28, 2020, at approximately 9:00 P.M., Plaintiff was housed in the C1 Dorm. (*Id*. at ¶ 6.)

3. Another inmate, known to Plaintiff as "Shaggy," offered Plaintiff a cigarette containing synthetic marijuana ("K2"), which Plaintiff smoked, getting "giddy and stoned."   (*Id*. at ¶ 7.)

4. At approximately 9:50 P.M., Defendant Marra was making security rounds in the sleeping area of the C1 Dorm.   (*Id*. at ¶ 8.)

5. Defendant Marra entered the C1 Dorm bathroom and "everyone fled."[2]   (Dkt. No. 51-2

---

[1] Plaintiff also offers a "Statement Of Additional Material Facts As To Which It Is Contended That There Exists A Genuine Issue To Be Tried."   (Dkt. No. 57-5 at 12-14.)   Several of the statements in that submission are supported solely by Plaintiff's Declaration, prepared after his deposition.   (*See id.* at ¶¶ 1, 2, 3, 4, 6-10, 14, 18-20.)   To the extent that Plaintiff's deposition testimony is at odds with his declaration, the Court will "follow the rule that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."   *See Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997).

[2] Plaintiff denied that "everyone fled" relying on his declaration, which states that Marra entered the bathroom and "other individuals complied" with his order to leave the bathroom and "exited the bathroom." (Dkt. No. 57-1 at ¶ 3.)   However, as discussed in Footnote 1, *supra*, the Court will not consider facts presented in the declaration that are in conflict with his deposition testimony.   *See Raskin,* 125 F.3d at 63.   During his deposition, Plaintiff testified that Marra walked in [while] we were doing these stupid little dances, and Marra came in and everyone fled."   (Dkt. No. 51-2 at 40.)

at 40[3]; Dkt. No. 57-2 at 22.)   Defendant Marra stood "dead center" in the doorway, asked

Plaintiff "what was going on," but did not approach Plaintiff.   (Dkt. No. 51-1 at ¶¶ 9-12;

Dkt. No. 51-2 at 40.)

6. Defendant Marra directed everyone to exit the bathroom and Plaintiff "approached"

   Defendant Marra.   (Dkt. No. 51-1 at ¶ 13.)

7. Defendant Marra grabbed Plaintiff on his upper torso area, leaned his hip into Plaintiff,

   and "took Plaintiff to the ground."   (Dkt. No. 51-1 at ¶ 15.)   Defendant Marra, a former

   wrestler, described the maneuver as a "hip toss."[4]   (Dkt. No. 57-2 at 29-30.)

8. Plaintiff landed face-first on the ground, and Defendant Marra landed on top of him.   (*Id.*

   at ¶ 16.)

9. Defendant Marra maintained control of Plaintiff through body holds.   (*Id.* at ¶ 17.)

10. Defendant Marra pressed a button on his radio to activate a Personal Alarm System

    ("PAS"), sending an alarm to the arsenal to dispatch a response team.   (Dkt. No. 51-1 at

    ¶ 18.)

11. Plaintiff was on the ground approximately twenty to thirty seconds before the response

    team arrived.   (*Id.* at ¶ 19.)

12. Defendant Hart handed Defendant Marra mechanical restraints, which Defendant Marra

---

[3] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office, and not the numbers on the documents themselves.

[4] Defendants object to the reference to Defendant Marra as a "wrestler" as an "improper character reference with "limited probative value."   (Dkt. No. 58 at 3-4.)   During Defendant Marra's deposition, Defendant Marra offered this fact.   Plaintiff's counsel asked Defendant Marra if previously executed a "hip toss," and Defendant Marra responded, "I wrestled, so - - ." (Dkt. No. 57-2 at 29.)   While the Court will consider this fact in the context of the within motion, this does not preclude Defendants from raising any objections to the admissibility of any such evidence at trial.

applied and no more force was used.   (*Id*. at ¶¶ 20-21.)

13. At 9:52 p.m., Plaintiff was escorted to the infirmary to be evaluated by medical staff following the use of force.   (*Id*. at ¶¶ 24, 25; Dkt. No. 57-4 at 1.)

14. Defendant Marra did not have any interaction with Plaintiff after the use of force.   (Dkt. No. 51-1 at ¶ 27.)

15. Defendant Marra completed a Use of Force Report defining the scope of the force used. (*Id*. at ¶ 28.)

16. Defendant Marra issued a misbehavior report charging Plaintiff with violating rules related to violent conduct, disturbance, and interference.   (*Id*. at ¶ 29.)

17. Plaintiff was subsequently found guilty of all charges in the misbehavior report.   (*Id*. at ¶ 30.)

18.  Plaintiff claims that he was involved in a second use of force that occurred in the infirmary, where Plaintiff allegedly sustained injuries.   Defendant Marra was not present during that incident.   (Dkt. No. 51-1 at ¶¶ 32-33.)

19.  On November 5, 2020, Defendants Weidner and Jackson were assigned to take Plaintiff out of his cell for interviewing and photographs.   (*Id*. at ¶¶ 34-35.)

20.  Defendants Weidner and Jackson retrieved Plaintiff from his cell, and took him to a strip frisk room, as directed, where photographs of Plaintiff were taken, and Plaintiff was interviewed.   (*Id*. at ¶ 36.)

21.  Neither Defendant Weidner nor Jackson has any specific recollection of interacting with Plaintiff while he was in the SHU; nor did either Defendant have a prior relationship with Plaintiff.   (*Id*. at ¶ 42.)

### C.      Parties' Arguments on Defendants' Motion

#### 1.      Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert three arguments.   (Dkt. No. 51-6.)   First, Defendants argue, Plaintiff's excessive force claims against Defendant Marra must be dismissed, because Plaintiff has failed to adduce admissible record evidence from which a rational jury could find that Plaintiff satisfied either (a) the governing standard's objective prong (requiring that the force that Defendant Marra used was objectively unreasonable and violated contemporary standards of decency) or (b) the governing standard's subjective prong (requiring that Defendant Marra's actions were maliciously motivated or wantonly applied).   (*Id*. at 8-12.) More specifically, Defendants argue that Defendant Marra's use of force was de minimis and that Plaintiff's alleged injuries were the result of a subsequent use of force that did not involve Defendant Marra.   (*Id*.)   With regard to the subjective prong of Plaintiff's claim, Defendants argue that the record evidence undisputedly establishes that Defendant Marra's "split-second determination" was not maliciously motivated and his actions were not wantonly applied.   (*Id.)*

Second, Defendants argue Plaintiff's retaliation claims against Defendants Weidner and Jackson must be dismissed because Plaintiff failed to establish a causal connection between his protected speech and alleged adverse actions.   (Dkt. No. 51-6 at 13-17.)

Third, Defendant Marra argues that, in the alternative, he is entitled to qualified immunity because it was objectively reasonable for him to believe that he was not violating Plaintiff's constitutional rights and his actions were not contrary to clearly established law.   (Dkt. No. 51-6 at 17-19.)

#### 2.      Plaintiff's Opposition Memorandum of Law

Generally, in his opposition, Plaintiff asserts two arguments.   (Dkt. No. 57-8.)   First, Plaintiff argues Defendants have not shown entitlement to summary judgment on Plaintiff's Eighth Amendment claims against Defendant Marra because there are triable issues of fact as to whether Defendant Marra used excessive force in violation of the Eighth Amendment.   (*Id*. at 7-14).   More specifically, Plaintiff argues that Defendant Marra's "body slam" was not de minimis and claims that he sustained multiple and severe injuries as a result of Defendant Marra's use of force.   (*Id*. at 8-13.)   Moreover, Plaintiff contends that, even assuming Plaintiff suffered no injury as a result of Defendant Marra's use of force, "a completely gratuitous use of force can constitute an Eighth Amendment violation even in the absence of physical injuries." (*Id*. at 9.)   With respect to the subjective element of the Eighth Amendment analysis, Plaintiff contends that Defendants rely entirely upon Defendant Marra's version of events, while ignoring Plaintiff's version.   (*Id*. at .13-14)

Second, Plaintiff argues, Defendant Marra is not entitled to qualified immunity because the law was sufficiently clear at the time of the alleged violations for Defendant Marra to have known that his conduct violated Plaintiff's rights. (Dkt. No. 57-8 at 10-12.)

Plaintiff does not oppose the portion of Defendants' motion that seeks summary judgment on behalf of Defendants Weidner and Jackson on Plaintiff's First Amendment retaliation claim. (Dkt. No. 57-8 at 5.)

### 3.  Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants assert four arguments.   (Dkt. No. 58.)   First, Defendants argue that that all properly supported facts asserted in the Statement of Material Facts must be deemed "admitted" by Plaintiff for purposes of Defendants' motion, because

Plaintiff has failed to support his various denials of Defendants' factual assertions with a specific citation to the record, as required by Local Rule 56.1(b) of the Local Rules of Practice for this Court.   (*Id*. at 2-5.)   Specifically, Defendants contend that Plaintiff attempts to improperly incorporate facts that are not supported by admissible evidence in his response to various paragraphs of Defendants' Statement of Material Facts.   (*Id*. at 2-3.)   Defendants also contend that Plaintiff issued "denials" of several statements, without factual citations.   (Dkt. No. 58 at 4.)

Second, Defendants argue that Plaintiff failed to show that there is a genuine issue of material fact with respect to the Eighth Amendment claims against Defendant Marra because: (a) Plaintiff's Declaration contains assertions that conflict with his prior deposition testimony; and (b) there is no admissible evidence from which a rational factfinder could conclude that Defendant Marra used force maliciously and sadistically.   (Dkt. No. 58 at 5-9.)

Third, Defendants claim that the evidence establishes that a reasonable correction officer would have believed that he was operating within the law and therefore, Defendant Marra is protected by the doctrine of qualified immunity.   (Dkt. No. 58 at 10.)

Finally, Defendants argue, Plaintiff does not oppose Defendants' request for summary judgment on his retaliation claim against Defendants Weidner and Jackson and Plaintiff fails to set forth any admissible record evidence creating a genuine issue of material fact precluding summary judgment on his retaliation claim against Defendants Weidner and Jackson.   (Dkt. No. 58 at 10.)

## II.    GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law."   Fed. R. Civ. P. 56(a).   A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."   *Id.* at 248.   As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."   *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).   As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.   *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."   *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).   However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.   Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.   *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (citing cases).   Of course, when a

non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).   Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.   *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F.Supp.2d 229, 232 (N.D.N.Y. 2001); N.D.N.Y. L.R. 56.1(a).   What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[5]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).   *See, e.g., Beers v. GMC*, No. 97-CV-0482 (NPM/DNH), 1999 WL 325378, at *8-9 (N.D.N.Y. March 17, 1999) (deeming plaintiff's failure to oppose certain of defendants' arguments as consent to the granting of summary judgment for defendants with regard to those arguments, under Local Rule 7.1(a)(3) (previously Local Rule 7.1(b)(3)); *Devito v. Smithkline Beecham Corp.*, No. 02-CV-0745 (NPM), 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert

---

[5] Among other things, Local Rule 56.1 (previously Local Rule 7.1(a)(3)) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1.

testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on

that ground).   Stated another way, when a non-movant fails to oppose a legal argument asserted

by a movant, the movant may succeed on the argument by showing that the argument possesses

facial merit, which has appropriately been characterized as a "modest" burden.   *See* N.D.N.Y.

L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the

moving party has met its burden to demonstrate entitlement to the relief requested therein ....");

*Rusyniak v. Gensini*, No. 07-CV-0279 (GTS/GHL), 2009 WL 3672105, at *1, n.1 (N.D.N.Y.

Oct. 30, 2009) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722 (GTS/GHL), 2009

WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (collecting cases).

## III.   ANALYSIS

### A.   Whether Defendant Marra's Use of Force Was Excessive

Defendant Marra seeks the dismissal of Plaintiff's excessive force claim arguing the force

used was reasonable under the circumstances and Defendant Marra's actions were not

maliciously motivated.   After careful consideration, the Court finds that there is a genuine

dispute of material facts regarding whether Defendant Marra's force was necessary, reasonable or

applied in a malicious manner.

To determine whether prison officials used excessive force in violation of the Eighth

Amendment, a court considers "whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm."   *Hudson v. McMillian*, 503

U.S. 1, 7 (1992).   To succeed on such a claim, a plaintiff must prove both an objective and

subjective element.   *See id.* at 7-8.

The objective element is "contextual and responsive to contemporary standards of

decency," *Hudson*, 503 U.S. at 8-9 (quotation and citation omitted), and requires that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir. 1999).   Thus, the Eighth Amendment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."   *Hudson*, 503 U.S. at 9-10 (quotation marks and citation omitted).   "Consequently, not every malevolent touch by a prison guard gives rise to a federal cause of action."   *Id*. at 9 (citation omitted).

The subjective component "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct."   *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (quotation marks and citations omitted).   Whether the defendant's conduct was "wanton" turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."   *Blyden*, 186 F.3d at 262-63.

"To prevail on an excessive force claim, [a p]laintiff must have suffered an actual injury that resulted from [the d]efendant['s] use of force."   *Portillo v. Webb*, No. 16 CIV 4731, 2022 WL 2337380, at \*9 (S.D.N.Y. June 29, 2022) (citing *Youngblood v. City of Mount Vernon*, 2017 WL 7804731, at \*7 (S.D.N.Y. Dec. 29, 2017)), *report and recommendation adopted*, 2022 WL 16736980 (S.D.N.Y. Nov. 7, 2022); s*ee also Johnson v. County of Nassau,* No. 09-CV-4746, 2010 WL 3852032, at \*3 (E.D.N.Y. Sept. 27, 2010) ("Proximate cause requires connecting the force used with the plaintiff's injury.")   However, "[a] plaintiff is not necessarily required to offer evidence of causation beyond his own testimony to survive summary judgment."   *Portillo*, 2022 WL 2337380, at \*9 (citing *Fernandez v. City of New York*, 2020 WL 3448019, at \*2-4

(S.D.N.Y. June 24, 2020)).   The Second Circuit has held an "appellant need not prove 'significant injury' to make out an excessive force claim and, thus, the fact that he suffered only minor injuries does not warrant dismissal.   *See Griffin v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999).

In the case at hand, the parties offer differing accounts of the events leading up to and during the use of force incident.   Defendant Marra argues that his "split-second decision to bring a charging, intoxicated, and incarcerated individual to the ground was proportionate, objectively reasonable, and d[id] not violate contemporary standards of decency."   (Dkt. No. 51-6 at 10.) Defendant Marra testified that he heard "screaming and yelling" coming from the inmate bathroom.   (Dkt. No. 57-2 at 15.)   Upon entering the bathroom, Defendant Marra claims he observed Plaintiff, with "glassy eyes," "pacing" and "sweating."   (*Id*. at 25.)   Defendant Marra testified that he had "reason to believe that [Plaintiff] was going to use force against him[.]"   (*Id*. at 27-28; Dkt. No. 51-1 at ¶ 13.)   Plaintiff approached Defendant Marra with "extended arms," "lean[ed] towards [his] direction, and "lunged" at Defendant Marra.   (*Id*.)   Defendant Marra testified that he grabbed Plaintiff by the arm, twisted it behind his back and drove Plaintiff to the floor.   (Dkt. No. 51-2 at 40-41.)   Defendant Marra described this act as a "body hold" or "hip toss" and explained that he grabbed Plaintiff by the upper torso area, leaned his hip into Plaintiff, and used his upper body and "momentum" to take Plaintiff to the ground.   (*Id*. at 29-30.)

Conversely, Plaintiff claims that Defendant Marra's use of force was "gratuitous," not a de minimis use of force.   (Dkt. No. 57-8 at 8-9.)   Plaintiff claims that the inmates in the bathroom were not yelling, screaming, or in distress.   (Dkt. No. 57-7 at ¶ 11.)   Plaintiff asserts that he did not lunge, raise a hand, or approach Defendant Marra in a "rapid manner."   (*Id*. at ¶

13

3.)   Plaintiff testified that he "didn't realize how serious [Defendant Marra] was to be taken" and attempted to "walk around him into the dayroom and did like a stupid little dance and he I guess found it disrespectful."   (Dkt. No. 51-2 at 40.)   Plaintiff described his actions as "a shimmy sort of[.]"   (*Id*. at 40.)

Defendant Marra further testified that he struggled to control Plaintiff until the "red dot response team arrived" and attempted to keep Plaintiff secured to the floor using body holds on Plaintiff's wrists and forced Plaintiff's hands behind his back.   (Dkt. No. 57-2 at 36-37; Dkt. No. 51-3 at 11; Dkt. No. 57-4 at 2, 6.)   Defendant Marra testified that Plaintiff "continued to struggle" to "get out of the situation he was in," "flail[ed] his arms," and continued to scream. (Dkt. No. 57-2 at 36-38.)   Defendant During this time, Defendant Marra remained on top of Plaintiff.   (*Id*. at 37.)   Plaintiff disputes this account and testified that he "didn't resist at all." (Dkt. No. 51-2 at 41-42.)

In cases of excessive force, the "core inquiry" is whether " 'force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' "   *Hogan v. Fischer*, 738 F.3d 509, 516 (2d Cir. 2013) (quoting *Hudson*, 503 U.S. at 6-7). Thus, accepting Plaintiff's version of events as true, a reasonable jury could conclude that Defendant Marra's action served no legitimate penological purpose.   S*ee Cole v. Rogers*, No. CV143216, 2017 WL 1157182, at *14 (E.D.N.Y. Mar. 6, 2017) (declining to award summary judgment based upon conflicting version of facts surrounding "body slamming"), *report and recommendation adopted*, 2017 WL 1155002 (E.D.N.Y. Mar. 27, 2017); *see Cuellar v. Love*, No. 11-CV-3632, 2014 WL 1486458, at *7 (S.D.N.Y. Apr. 11, 2014) (concluding that a reasonable jury could find that the plaintiff was injured, "as a result of being slammed to the

ground"); *see also Frost v. New York City Police Dep't*, 980 F.3d 231, 254 (2d Cir. 2020) (holding that the undisputed facts were insufficient at this stage in the litigation to support a ruling in favor of defendants on excessive force claim where the plaintiff claimed he insulted rather than threatened the defendants and that he was not actively resisting and claimed the defendants tackled, kicked, and dragged him bruising his face and rupturing his eardrum).

With respect to the issue of injuries and causation, the record establishes that, after the incident, Plaintiff was examined by a nurse at the facility.   (Dkt. No. 57-5 at 1.)   The nurse noted that Plaintiff sustained "discolored, reddened, swollen area beside [his] right eye," "abrasions on [the] right side of neck," and "multiple reddened areas on [his] back."   (*Id.*) Plaintiff was transported to "Gouverneur ER via ambulance." (*Id.*)   On October 29, 2020, Plaintiff underwent x-rays that revealed "acute non-displaced fractures to the left 7, 8, 9, 10 anterolateral ribs."   (Dkt. No. 57-6 at 4.)

Defendants argue that, even assuming Plaintiff sustained the aforementioned injuries, the injuries are causally related to the second use of force incident that occurred, on the same day, in the infirmary.   However, because the incidents occurred on the same day, the issue of causation should be resolved at trial.   *See Thomas v. Bowles*, 1998 WL 460292, at *8, n.3 (N.D. Tex. Aug. 4, 1998) (declining to award summary judgment where the incidents occurred two days apart).

Despite this evidence, Defendants argue that there is no material issue of fact regarding causation because Plaintiff testified that "all" of his physical injuries resulted from the subsequent use of force.   Specifically, Plaintiff testified that his ribs were broken as a result of an excessive force incident in the infirmary strip frisk room, which did not involve Defendant Marra.   (Dkt. No. 51-2 at 46, 74-75.)   Defendants argue that Plaintiff's statements as to the

15

"causation of the injury at deposition are relevant." (Dkt. No. 51-6 at 9, 11; Dkt. No. 58 at 7.)

However, the Second Circuit has held, "expert medical opinion evidence is usually required to

show the cause of an injury or disease because the medical effect on the human system of the

infliction of injuries is generally not within the sphere of the common knowledge of the lay

person." *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999).   Even assuming Plaintiff's

statements are relevant, the Court finds Defendants' argument to be disingenuous and

unpersuasive because Defendants seemingly ignore the statements made by Defendant Marra at

his deposition.   Specifically, Defendant Marra testified as follows:

> Q.   Do you believe those ribs got broken by you bringing him down to the ground?
>
> A.   I would assume so, yes.
>
> Q.   Okay.   And describe for me the mechanism by which you believe his four ribs got broken by you just doing a hip toss.
>
> A.   From my body weight landing on his - - on his side. (Dkt. No. 57-2 at 32.)

Accordingly, even if the Court accepts the lay opinions, there are clearly genuine issues

of fact as to which use of force incident caused Plaintiff's purported injuries for a jury to resolve.

Finally, the caselaw cited by Defendants is readily distinguishable from the facts at hand.

Specifically, in *Bermudez v. Waugh*, No. 9:11-CV-0946 (MAD/DEP), 2013 WL 654401

(N.D.N.Y. Feb. 21, 2013), the plaintiff testified that he sustained "only a little red mark or red

bruise, which was only a couple centimeters across."   (*Id*. at *5 (citations omitted).)   The Court

noted that while the injuries were de minimis, summary judgment was appropriate because the

defendant "only used force as a result of [the p]laintiff's explicit refusal to obey multiple orders"

and therefore, the plaintiff failed to establish that the force was used in a malicious or sadistic

manner.   (*Id*. at *6.)   Here, as discussed *supra*, there are genuine issues of fact with respect to

whether Plaintiff sustained injuries as a result of Defendant Marra's use of force and whether Defendant Marra applied force maliciously.   Moreover, the record is devoid of any evidence suggesting that Defendant Marra used force after Plaintiff failed to obey "multiple orders."[6] Accordingly, reliance upon *Bermudez* is misplaced.

Based upon the current record, the Court finds that a rational jury could conclude that Defendant Marra "used more force than was necessary to subdue" Plaintiff.   *See Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003).   Accordingly, Defendants' motion with regard to this claim is denied.

**B.     Whether Plaintiff's First Amendment Retaliation Claims Against Defendants Weidner and Jackson Must Be Dismissed**

As an initial matter, because Plaintiff did not oppose Defendants' argument that his retaliation claims against Defendants Weidner and Jackson should be dismissed, Defendants' burden with regard to this claim is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a "modest" burden.  *See Rescuecom Corp. v. Chumley*, 07–CV–0690 (GTS/GHL), 2011 WL 2791272, at *3 & n. 4 (N.D.N.Y. July 14, 2011) (collecting authorities); *Singleton v. City of Newburgh*, 1 F.Supp.2d 306, 312 (S.D.N.Y.1998) (deeming the plaintiff's claim "abandoned" and granting the defendants' motion for summary judgment where claim was alleged in the complaint but "not raised elsewhere in the record"); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F.Supp. 895, 907 n.

---

[6] Defendants argue that Defendant Marra "verbally engage[d] with Plaintiff as a minimally invasive attempt to resolve" and "de-escalate" the situation.  (Dkt. No. 51-6 at 13.)   However, the record does not support that assertion.   During his deposition, Defendant Marra testified that he "asked [Plaintiff] if he was okay" and Plaintiff did not respond.   (Dkt. No. 57-2 at 26.)   The record lacks evidence establishing that Defendant Marra issued a directive or order and further, lacks evidence establishing that Plaintiff disobeyed or disregarded any such order.   Indeed, the misbehavior report authored by Marra, does not include any violation for failure to obey orders. (Dkt. No. 51-3 at 13.)

11 (S.D.N.Y.1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir.1997).

After carefully considering the matter, the Court finds that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law.   The Court would add only that, based on its own independent review of the record, the Court can find no record evidence to support the claim that Defendants Weidner and Jackson were motivated to retaliate against Plaintiff.   The record establishes that, on November 5, 2020, Plaintiff was interviewed and "questioned" about the October 28, 2020 incident.   (Dkt. No. 51-2 at 59.)   The record however, lacks any facts related to the interview including who conducted the interview, who was present during the interview, or the sum and substance of the interview.   In support of the motion for summary judgment, Defendants Weidner and Jackson submitted declarations averring that Plaintiff was interviewed in private without Weidner or Jackson present.   (Dkt. No. 51-4 at ¶ 8; Dkt. No. 51-5 at ¶ 8.)   Defendants further attest that they did not hear the interview and did not know what the interview was about.   (*Id.* at ¶ 9.)   Even assuming the interview involved Plaintiff's complaints related to the use of force on October 28, 2020, "[a]s a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant."   *Hare v. Hayden*, No. 09-CV-3135, 2011 WL 1453789 at *4 (S.D.N.Y. Apr. 14, 2011).   Here, the record lacks facts establishing a connection between the protected speech, i.e., the interview and the alleged adverse action, i.e., the use of excessive force by Weidner and Jackson.   *See id.*, at *4-5 (holding that the plaintiff "fail[ed] to establish that [the defendant] had a motive to retaliate" against him for complaints filed against another corrections officer).   Thus, without evidence establishing a causal connection between the alleged adverse action and protected conduct,

Plaintiff's retaliation claims must be dismissed.   *See Stevens v. Duquette,* No. 9:20-CV-853 (BKS/ATB), 2022 WL 2292975, at *7 (N.D.N.Y. Apr. 19, 2022) (granting summary judgment dismissing retaliation claims where the record established the plaintiff did not file complaints against the defendants, the defendants did not make contemporaneous comments concerning grievances and the record lacked evidence of a "close working relationship" between officers), *report and recommendation adopted*, 2022 WL 2292047 (N.D.N.Y. June 24, 2022), *aff'd*, 2024 WL 705954 (2d Cir. Feb. 21, 2024)

### C.   Whether Defendant Mara is Entitled to the Defense of Qualified Immunity

Defendant Marra seek dismissal of Plaintiff's excessive force claims on the alternative ground that he is protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances.

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

There is no doubt that the right to be free from the use of excessive force was "clearly established" at the time of the incidents giving rise to Plaintiff's claims.   *See, e.g., Hudson*, 503 U.S. at 9-10.   Moreover, with regard to whether it was objectively reasonable for Defendant Marra to use the alleged amount of force that he used, the Second Circuit has made clear that, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin*, 297 F.3d 114,

122 (2d Cir. 2002) (internal quotation marks omitted).

Here, after carefully reviewing the record, and construing it in the light most favorable to Plaintiff, the Court finds that it cannot conclude whether Defendant Marra's use of force violated a clearly established right or was objectively unreasonable based on the admissible evidence currently in the record.   As the court noted previously, there remain genuine issues of material facts as to whether Defendant Marra used more force than was necessary to subdue Plaintiff.   As the Second Circuit has observed, it is impossible to "determine whether [Defendants] reasonably believed that [their] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded." *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999); *see also Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon]. Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment."). Moreover, the Court cannot determine whether Plaintiff was resisting or struggling with Defendant Marra after he had been taken to the ground, or whether Defendant Marra's force caused injury to Plaintiff.

For these reasons, the Court rejects Defendants' argument that Plaintiff's excessive force claim should be dismissed on the ground of qualified immunity as it relates to Defendant Marra.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 51) is

**<u>GRANTED in part and DENIED in part</u>** as described above in this Decision and Order; and it

is further

**ORDERED** that the Clerk of the Court shall enter Judgment for Defendants Weidner and

Jackson on Plaintiff's retaliation claims under the First Amendment, which is **DISMISSED**.


Dated: May 9, 2024
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

21