UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL McCALLION,

*Plaintiff*,

-against-                                                22-CV-0253

MATTHEW MARRA, *et al.*,                                 GTS

*Defendants*.

---

## DEFENDANTS' TRIAL BRIEF

LETITIA JAMES
New York State Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

Jorge A. Rodriguez, Assistant Attorney General, of Counsel
Bar Roll No. 516423
Olivia R. Cox, Assistant Attorney General, of Counsel
Bar Roll No. 703982                          Date: February 20, 2025

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

    POINT I ................................................................................................................................ 3

    PLAINTIFF WILL BE UNABLE TO ESTABLISH THAT PLAINTIFF WAS
    SUBJECTED TO EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH
    AMENDMENT............................................................................................................... 3

    POINT II .............................................................................................................................. 5

    PLAINTIFF WILL BE UNABLE TO ESTABLISH THAT DEFENDANTS
    FAILED TO INTERVENE.............................................................................................. 5

    POINT III ............................................................................................................................ 6

    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ................................ 6

CONCLUSION........................................................................................................................... 8

## PRELIMINARY STATEMENT

Plaintiff, Michael McCallion ("Plaintiff"), formerly an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action against Defendants, Matthew Marra, Joseph Coffey, Marcus Hart, Gordon Griffith, Shawn Barbarito, Craig Jackson and Kreg Weidner ("Defendants"), pursuant to 28 U.S.C. § 1983, alleging that Defendants violated his rights under the Eighth Amendment by using excessive force and/or failing to intervene to protect him from the infliction of excessive force. The credible and objective evidence introduced at trial will establish that Plaintiff was not subjected to excessive use of force, and that Defendants' actions were appropriate under the circumstances and in accordance with their obligations under the Eighth Amendment. Finally, all claims against Defendants must be dismissed because they are entitled to qualified immunity.

## STATEMENT OF FACTS

The credible and objective evidence at trial will establish the following facts:

### Use of Force Incident and Escort to Infirmary on October 28, 2020

On October 28, 2020, Plaintiff was under the custody of DOCCS and residing at Gouverneur Correctional Facility ("Gouverneur"), located in Gouverneur, New York. At approximately 9:50 pm, Defendant Marra was conducting security rounds in the C-1 Dorm at Gouverneur. As he was conducting his rounds, Defendant Marra heard yelling and screaming coming from the incarcerated individual bathroom. Defendant Marra walked into the bathroom to investigate and observed Plaintiff yelling, screaming and behaving in an erratic manner. Defendant Marra approached Plaintiff to ascertain his condition. Plaintiff, who was under the influence of synthetic marijuana at the time, aggressively charged at Defendant Marra. In response, Defendant Marra used holds and grabs to bring Plaintiff under control. Specifically, Defendant

1

Marra executed a hip toss, which resulted in Plaintiff landing face-down on the concrete floor of the bathroom.  In the process, Defendant Marra also fell, landing on Plaintiff's left side.  While on the floor, Defendant Marra continued to struggle to bring Plaintiff under control and called for an emergency response. The facility then sent a request to security staff to respond to an emergency at the C-1 Dorm.

Upon receiving notice of the call for emergency response, Defendants Coffey, Hart, Griffith, and Barbarito responded to the C-1 Dorm to assist. Defendant Hart entered the bathroom, where he saw Defendant Marra on top of Plaintiff, struggling to gain control of him. In an effort to assist, Defendant Hart handed his mechanical restraints to Defendant Marra, who applied them to Plaintiff. Once the mechanical restraints were applied, Plaintiff became compliant, and all force ceased.  No other force was used during the course of this incident.

In accordance with DOCCS policies and procedures, Defendants Barbarito, Hart, and Griffith escorted Plaintiff to the infirmary to be examined by medical staff.  Defendant Coffey, a Corrections Sergeant, supervised the escort.  While in the infirmary, Plaintiff admitted to having smoked K2 (synthetic marijuana). Plaintiff was examined by Gouverneur medical staff, who noted the injuries sustained. Medical staff also noticed that Plaintiff appeared lethargic, pale, diaphoretic, with low blood pressure, all symptoms consistent with a suspected overdose. Pursuant to DOCCS policy, medical staff then administered Narcan to no effect. Plaintiff was then transported by DOCCS security staff out of the facility to receive additional medical treatment.

Contrary to Plaintiff's allegations, Defendants did not divert him to a frisk room during the escort to the infirmary, and did not assault him in any manner. As a result of his actions while in the C-1 Dorm, Plaintiff was issued misbehavior reports by Defendants Coffey and Marra charging him with, *inter alia*, violent conduct, drug use, and creating a disturbance. Upon return to

2

Gouverneur from receiving outside medical treatment, Plaintiff was placed in disciplinary housing at the Special Housing Unit ("SHU") pending a hearing on the misbehavior reports issued against him.

<u>Escort in SHU on November 5, 2020</u>

On November 5, 2020, during a hearing on the misbehavior reports, Plaintiff made his first complaint regarding the officers' alleged conduct on October 28, 2020, claiming that he was assaulted in the infirmary by unknown officers. The hearing officer submitted Plaintiff's complaint to facility staff for investigation. After conclusion of the hearing, Plaintiff was escorted back to his cell in the SHU. Later that day, at the direction of a non-party sergeant, Defendants Jackson and Weidner escorted Plaintiff out of his cell to an interview room where Plaintiff was interviewed by security staff regarding his allegations of assault, photographed, and examined by medical staff in accordance with DOCCS policies and procedures. During this escort Defendants Jackson and Weidner did not attempt to dissuade Plaintiff from reporting his allegations of assault or threaten him in any manner. After the interview and examination, Plaintiff was escorted back to his cell by Defendants Jackson and Weidner without incident. Defendants Jackson and Weidner did not attempt to choke him, strike him in the right ear, or use any force on Plaintiff during the escort back to his cell.

**ARGUMENT**

**POINT I**

**PLAINTIFF WILL BE UNABLE TO ESTABLISH THAT PLAINTIFF WAS SUBJECTED TO EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT**

"In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that some person acting under color of state law deprived him of a federal right." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986). "Because vicarious liability is inapplicable to … § 1983 suits, a

3

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010). "To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

To sustain a claim of excessive force, a plaintiff must establish both the objective and subjective elements of an Eighth Amendment claim. *See Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). In order to satisfy the objective element, a defendant's conduct must be "inconsistent with the contemporary standards of decency." *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (internal quotation marks omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotation marks omitted).

"The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (some internal quotation marks omitted). "When prison officials are accused of using excessive force, the 'wantonness' issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

The substantive proof will reflect that, on October 28, 2020, Defendant Marra's conduct was consistent with the law, as his actions in bringing Plaintiff to the ground and subsequently

4

restraining him were consistent with his good-faith efforts to restore order and protect himself from injury. The evidence will also reflect that Defendants Hart, Griffith, Barbarito, and Coffey escorted Plaintiff to the infirmary without incident and, therefore, no use of force – excessive or otherwise – was used.

Lastly, with regard to Defendants Jackson and Weidner, the proof will reflect that Plaintiff's escort to and from his cell on November 5, 2020 was uneventful and that no force was used by Defendants. In both instances, Plaintiff will be unable to establish that any Defendant possessed the wanton state of mind necessary to satisfy the subjective prong of an excessive force claim.

**POINT II**

**PLAINTIFF WILL BE UNABLE TO ESTABLISH THAT DEFENDANTS FAILED TO INTERVENE**

Liability under Section 1983 for failure to intervene can arise if: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd in part and vacated in part*, 461 Fed. App'x 18 (2d Cir. 2012). "Failure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Usavage v. Port Auth. Of New York & New Jersey*, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013) (internal quotation marks omitted).

Here, the evidence will reflect that none of the defendants had reason to know that Plaintiff was at risk of harm, or had a reasonable opportunity to intervene to protect Plaintiff. The proof will reflect that the only use of force occurred at the C-1 Dorm bathroom when Plaintiff charged at Defendant Marra, and that Defendant Marra responded by using only the necessary force to

5

restore order and gain compliance from Plaintiff. Defendants Hart, Coffey, Griffith, and Barbarito did not observe Defendant Marra engage in excessive force and, thus, none of these officers had any opportunity or reason to intervene because Plaintiff was being lawfully restrained by Defendant Marra.  Further, as no force was applied to Plaintiff at any point during the escort to the infirmary by Defendants Hart, Coffey, Griffith, and Barbarito, there was no reason or opportunity to intervene to protect Plaintiff from harm. Similarly, as there was no use of force by either Defendants Jackson or Weidner on November 5, 2020, during his escort to and from his interview with security and medical staff at the SHU, there was no reason or opportunity for them to intervene to protect Plaintiff.

## POINT III

## DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). "Qualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation." *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal citations and quotation marks omitted). "To lose immunity, an official must violate a right, the contours of which are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Drimal v. Tai*, 786 F.3d 219, 225 (2d Cir. 2015) (internal quotation marks omitted). "An officer's actions are objectively reasonable if officers of reasonable competence could disagree on the legality of the defendants' actions." *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001) (internal quotation

6

marks omitted). In addition, "qualified immunity protects government officials when they make 'reasonable mistakes' about the legality of their actions ...." *Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)), *cert. denied*, 132 S. Ct. 499 (2011). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

"[I]t is well settled that a defendant may be entitled to qualified immunity even where he has used excessive force." *Henry v. Dinelle*, 929 F. Supp. 2d 107, 123 (N.D.N.Y. 2013), *aff'd*, 557 F. App'x 20 (2d Cir. 2014); *see also Lynch v. Barker*, No. 9:21-CV-0089, 2022 WL 17093420, at *4-5 (N.D.N.Y. Nov. 21, 2022) (rejecting the plaintiff's contention that qualified immunity was unavailable to the defendants in a case involving Eighth Amendment claims of excessive force against prisoners) (citing *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) (observing that "[t]he Supreme Court has recently made clear that even officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection from the sometimes hazy border between excessive and acceptable force." (internal quotation marks omitted)); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995) ("While the right of an individual not to be subjected to excessive force in any context is 'clearly established' in the conventional sense, the ... Supreme Court teaches that the facts and circumstances of each case must be examined to determine whether [the defendants are entitled to qualified immunity]." (internal quotations omitted)).

The doctrine of qualified immunity "strikes a balance between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith

7

from having to explain their actions to the satisfaction of a jury." *Poe v. Leonard*, 282 F.3d 123, 131 (2d Cir. 2002) (internal quotation marks omitted). Based upon the above statements of the law and the facts which will be shown at trial, all Defendants are entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, judgment should be entered in favor of Defendants and this action should be dismissed in its entirety, together with such other and further relief this Court shall deem just, proper, and equitable.

Dated: Albany, New York
        February 20, 2025

LETITIA JAMES
New York State Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

By: s/ Jorge A. Rodriguez
Jorge A. Rodriguez
Assistant Attorney General, of Counsel
Bar Roll No. 516423
Telephone: 518-776-2179
Email: Jorge.Rodriguez@ag.ny.gov

By: s/ Olivia R. Cox
Olivia R. Cox
Assistant Attorney General, of Counsel
Bar Roll No. 703982
Telephone: 518-776-2607
Email: Olivia.Cox@ag.ny.gov

To:    *Via ECF*
        All counsel of record